MARY A. BENEVENTO, as Administratrix of the Estate of EGIDIO BENEVENTO, Deceased, Respondent, *v.* POERTNER MOTOR CAR COMPANY, Appellant.

**Motor vehicles — negligence — action to recover for death of plaintiff's intestate from injuries received in collision with car of defendant — defense that chauffeur at time of accident was not engaged in defendant's business — evidence — erroneous exclusion of evidence tending to prove such defense.**

In an action against defendant for injuries sustained by plaintiff's intestate causing his death, it appeared by the testimony, with the exception of that of a single witness, that at the time of the accident defendant's chauffeur was not engaged in the business of defendant but on an expedition for his own individual pleasure or purpose and that defendant was not liable in the action. A policeman testified without objection that after the accident he asked the chauffeur how he came to have the car and that the chauffeur in substance stated defendant had directed him to go to his dinner with the car, which he claimed he was doing when the accident happened. On examination of this evidence, which was contradicted by a witness who was present at the time, in connection with his own cross-examination which was irreconcilable with his statement in chief, *held,* that under these circumstances the trial justice and the jury were not authorized to disregard the evidence in the case which disclosed that at the time of the accident the chauffeur was not acting in the course of his employment.

*Benevento* v. *Poertner Motor Car Co.,* 200 App. Div. 887, reversed.

(Argued December 14, 1922; decided February 27, 1923.)

APPEAL from a judgment of the Appellate Division fo the Supreme Court in the first judicial department, entered February 17, 1922, affirming a judgment in favor of plaintiff entered upon a verdict.

*Theodore H. Lord* and *Fred H. Rees* for appellant. The chauffeur at the time of the accident was using the car solely for his own personal purpose and entirely outside of the scope of his authority; the defendant, therefore, is not chargeable for any negligence on his part while

he was using the car for his own personal purpose, and the complaint should be dismissed. (*Plyer* v. *G. A. Ins. Co.*, 121 N. Y. 689; *Carter White Lead Co.* v. *Pounds*, 65 App. Div. 476; *Maher* v. *N. Y. C. T. Co.*, 20 App. Div. 161; 162 N. Y. 633; *Hines* v. *Proctor*, 73 Hun, 265; 151 N. Y. 520; *Hine* v. *Cushing*, 53 Hun, 519; *McKeerman* v. *Hull*, 65 Misc. Rep. 138; *Der Ohannessian* v. *Elliott*, 233 N. Y. 326; *Fulik* v. *Meneely*, 232 N. Y. 580; *Perlmutter* v. *Byrne*, 193 App. Div. 769; *Fallon* v. *Schwackhamer*, 226 N. Y. 444; *Rose* v. *Balfe*, 223 N. Y. 481; *Potts* v. *Pardee*, 220 N. Y. 421.)

*David L. Weil, Harold R. Medina* and *Moses Feltenstein* for respondent. Taking the testimony submitted by the defendant at its face value, there was ample proof that Phipps was engaged on the business of his employer at the time of the accident as matter of law. (*Blaker* v. *Phil. El. Co.*, 60 Penn. Super. Ct. 56; *Dockweiler* v. *Am. Piano Co.*, 94 Misc. Rep. 712; *Jones* v. *Wiegand*, 134 App. Div. 644; *Bila* v. *Bloomingdale*, 184 App. Div. 65; *Fisick* v. *Lorber*, 95 Misc. Rep. 574; *McCauley* v. *Hutkoff*, 30 Misc. Rep. 97; *Perlmutter* v. *Byrne*, 193 App. Div. 769; *Fallon* v. *Schwackhamer*, 226 N. Y. 444; *Rose* v. *Balfe*, 223 N. Y. 481; *Potts* v. *Pardee*, 220 N. Y. 431; *Donnelly* v. *Yuille*, 197 App. Div. 59; *Coyne* v. *Kennedy*, 229 N. Y. 550.) In any event there was some evidence in support of the verdict and the refusal of the trial court to dismiss the complaint was clearly correct. (*Ferris* v. *Sterling*, 214 N. Y. 249; *Healy* v. *Bernstein*, 168 N. Y. Supp. 41; *Doherty* v. *Hazelwood Co.*, 175 Pac. Rep. 849; *Maloy* v. *Rosenbaum Co.*, 103 Atl. Rep. 882; *Ward* v. *Teller Reservoir & Irrigation Co.*, 153 Pac. Rep. 219.)

Hogan, J. On September 15th, 1920, plaintiff's intestate died as the result of injuries received by him due to a collision with an automobile at Amsterdam avenue and West Eightieth street, in the city of New York,

about one o'clock or early thereafter in the afternoon
of that day.  The automobile was the property of defend-
ant, which maintains a salesroom and office on Broadway,
between Fifty-sixth and Fifty-seventh streets, in the city
of New York, at which place it is engaged in the sale of
automobiles.  In addition defendant maintains a service
station on West Fifty-seventh street, between Eleventh
and Twelfth avenues, in New York, and a store in
Newark, New Jersey.  Amongst other employees of
defendant was one Phipps, a licensed chauffeur, who was
operating a car of defendant at the time of the accident.
Upon proof of such facts a presumption arose that the
car was at the time of the accident engaged in the business
of defendant and it was incumbent upon defendant to
rebut such presumption.

The evidence adduced on behalf of defendant disclosed:
On the morning of September 15th, 1920, Phipps was
directed by one Seller, manager of defendant, to go to
the Newark store, there get a Scripps-Booth sedan car
which had been sold to a customer in Brooklyn, and
bring the car to the New York store.  Phipps, who
frequently performed a like service, proceeded in company
with one Mr. Renner by automobile to Newark, procured
the sedan and started for New York.  He entered the
city by the Forty-second Street ferry, drove through Forty-
second street to Tenth avenue, northerly on Tenth avenue
to Seventy-first street, where the same intersected Amster-
dam avenue, thence up Amsterdam avenue to Eightieth
street, where the accident occurred, a location upwards
of one mile northerly of the salesroom of defendant,
where he was directed to take the car.  Phipps was at
the time unmarried and resided or roomed at No. 21
West One Hundred and Thirty-sixth street, some three
miles northerly of the place of the accident.  During
the time he had been in the employment of defendant,
a period of upwards of one and one-half years, he was
accustomed to eat his lunch at a restaurant on Eighth

avenue at Fifty-third street. His explanation of his presence at Eightieth street and Amsterdam avenue was that when he left his residence in the morning he had forty cents in money on his person, thirty-six cents of which he paid for ferry charges on his return from Newark, and not having sufficient money to purchase his lunch he started for his residence on West One Hundred and Thirty-sixth street to obtain money to pay for his lunch. He testified that he did not tell anybody connected with the defendant that he was going with the car to his house, and it was not the custom to draw money in advance from defendant. He intended to eat his lunch at the restaurant on Eighth avenue at Fifty-third street. On cross-examination the witness testified that as to his disbursement of thirty-six cents for defendant, he would have to tell about it after his return to the store and ask for it; that on previous occasions sometimes he was given money to pay ferry charges and on other occasions he was not, and when not, he paid the charge and afterwards was paid the same. He had theretofore used cars of defendant around the city, and if out at lunch hour he would stop and get his lunch and then go on with his work, but at no time were any of defendant's men with him.

After the accident Phipps was taken to the station house by a police officer. He did not recall having told the officer how the accident happened, but did relate the facts surrounding the same to the lieutenant at the desk at the police station house. He did not remember stating to the police officer that his employer had sent him to the factory to get a car and directed him to go to his dinner with it so as to hurry up and be back in time because they wanted him. On re-direct examination the witness testified that he did not say to any one that he was hurrying home to dinner, but did say, not having any money left, " I started on my way home to get some money for my lunch;" that he did not remember that

it was to any one save the lieutenant at the station house, but whichever officer it was, that is what he told. On re-cross-examination, one Niemand, a police officer, was pointed out to the witness and the witness persisted in his response that he did not remember telling the officer the story as asked him, but did tell it to the lieutenant. He denied that he told any person that his boss sent him home with the car to dinner; did not tell anybody that he was sent home; only said he was on his way home to lunch, and as matter of fact was not sent home by any boss with the car to go to his lunch.

Four witnesses connected with defendant at its salesroom testified that no orders or permission to use the car, as the same was used by Phipps, were given him. One of the witnesses was Seller, the manager of defendant, who gave the order to Phipps to go to Newark, get the car and bring it to him; that after giving such directions he did not see Phipps again until after the accident. On cross-examination the witness testified that while he had no control over Phipps' lunch hour, he presumed that Phipps, if out with a car at dinner hour, would naturally stop to eat, but he never gave him orders to that effect, and that he had no objection to Phipps getting his meal under such circumstances. The evidence also discloses that Phipps did not call at the service station of defendant on West Fifty-seventh street, between Eleventh and Twelfth avenues, though his course northerly was within one block of the same.

The police officer was called in rebuttal by plaintiff. He first heard of the accident at 1:35 P. M. and went to the hospital, where he met Phipps and asked him about the accident, asked him how he came to have the car. In answer to that question, in words or substance, Phipps stated that his employer had sent him to the factory to get the car and directed him to go to his dinner with it, so as to hurry up and be back in time because they

9

wanted him. Asked by the court: " Did you put that down anywhere at that time? " the witness answered: " No, I did not, your Honor." The witness admitted that he testified in police court. From the minutes of the proceedings in police court his evidence then was read to him at length wherein no reference was made to such statement as he had testified to, although he stated that his evidence covered the entire conversation with Phipps. He also had his note book in which memorandum is made and in which he made a note of Phipps' statement to him, but the book did not contain the statement made by the witness on the trial, neither did it appear on the police blotter. He stated also that the magistrate was not interested in that evidence, but only to find out if the witness had knowledge of criminal negligence, though admitting he could now see the importance of his testimony.

On behalf of defendant, a witness, Miller, who had taken the injured man to the hospital, was called and testified that he was present and heard the conversation between Phipps and the policeman; that Phipps did not say to the policeman that his boss told him to take the automobile and go to his lunch and hurry back.

The trial justice charged the jury that the only testimony in the case showing that defendant knew where the chauffeur was going at the time of the accident was that given by the policeman. After the jury reported, a motion was made to set aside the verdict, and the trial justice stated, " The only thing that took the case to the jury is Niemand's testimony. If Niemand's testimony was not in the case, it never could have gone to the jury. Niemand's testimony took it to the jury, and I suppose, being a question of fact, I have got to let it stand."

The witness Phipps remained in the service of defendant some three months after the accident. He then secured other employment, and at the time of the trial

of this action had not been in the service of defendant for several months.

The testimony of Niemand on cross-examination was irreconcilable with his testimony in the police court immediately following the accident and with the memorandum made by him in his book, or appearing on the police blotter. The statement made by Niemand was contradicted by Phipps and by the witness Miller. The justice, in the absence of Niemand's evidence that Phipps had stated to him that defendant had directed him to get the car, to go to his dinner with it and hurry back, necessarily would have held as matter of law that at the time of the accident Phipps was not .engaged in the business of defendant, but on an expedition for his individual pleasure or purpose, and that defendant was not liable in this action.

The evidence of Niemand as to the alleged declaration of Phipps that the latter was told by defendant to use the car to go home and get his dinner was admitted without objection and necessarily was considered by the jury as material upon the question as to whether or not Phipps, at the time of the accident, was operating the car by direction of and in the manner authorized by defendant. The trial justice submitted the case to the jury solely by reason of such evidence. Therein the trial justice erred. The jury was not authorized to disregard the evidence which clearly disclosed that the chauffeur, at the time of the accident, was not acting in the course of his employment. The car in question was a new car which had been sold and which was to be delivered to the purchaser at the salesroom of defendant on Broadway, between Fifty-sixth and Fifty-seventh streets, and was actually delivered to the purchaser at that place the day following the accident.

When Phipps returned from Newark with the car and arrived on the New York side of the Forty-second Street ferry, instead of stopping at the service station or the

salesroom of defendant, he started up Tenth avenue to his rooming quarters on West One Hundred and Thirty-sixth street, some four miles distant to obtain money for his lunch, he transgressed any authority he had, actual or implied, from the defendant. If as matter of fact he had but forty cents in his pocket when he left home in the morning and paid thirty-six cents for ferry charges, it was his duty to obey the directions given him to return to the salesroom with the car in the first instance, relate his circumstances and have defendant refund to him at least the thirty-six cents paid out by him. He was accustomed to eat lunch within a few blocks from the salesroom and presumably knew that morning how much money he had in his pocket. He diverged from the course which would bring him to the salesroom where he was ordered to return with the car and started on a trip distant four miles entirely disconnected with his employment, the unfortunate accident resulting. Phipps did not claim that he had permission to diverge from his course back to the salesroom of defendant. His sole excuse for the course he took was lack of funds. He denied telling Niemand that defendant told him to go to his house and get dinner.

In view of the circumstances, I am of opinion that the trial justice and the jury were not authorized to disregard the evidence in the case which disclosed that at the time of the accident the chauffeur was not acting in the course of his employment.

The judgments should be reversed, and a new trial granted, with costs to abide event.

HISCOCK, Ch. J., POUND, McLAUGHLIN and ANDREWS, JJ., concur; CARDOZO and CRANE, JJ., dissent.

Judgments reversed, etc.