MARY BYRNE, Respondent, *v.* ISAAC MENDELSON, Appellant.

First Department, July 2, 1924.

Motor vehicles — action for injuries suffered by plaintiff when she was struck by defendant's automobile — automobile was driven by woman unknown to defendant in company with defendant's chauffeur — chauffeur started for garage, picked up woman on way and drove beyond garage — chauffeur did not have special or general permission to use automobile — defendant is not liable.

The owner of an automobile is not liable for injuries suffered by a pedestrian when she was struck by the automobile, where it appears that the owner directed the chauffeur to take two guests to their homes; that after the chauffeur had done so and while he was on his way to the garage he picked up a woman not known to him or to the owner of the automobile and drove with her about four miles beyond the garage; that he permitted the unknown woman to drive the automobile and the accident happened during the time she was driving; and that while the owner did not specifically direct the chauffeur to take the automobile to the garage, he did not give him permission to use the automobile for his own purposes nor did the chauffeur have general permission to use the automobile when he chose.

APPEAL by the defendant, Isaac Mendelson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of May, 1923, upon the verdict of a jury for $5,000.

*Wing & Wing* [*Arthur K. Wing* of counsel; *Theodore H. Lord* with him on the brief], for the appellant.

*Mork, McKiniry & Baum* [*I. Maurice Wormser* of counsel; *Seymour Mork* with him on the brief], for the respondent.

First Department, July, 1924.          [Vol. 210

DOWLING, J.:

The plaintiff was crossing St. Nicholas avenue at One Hundred and Eighty-first street in the city of New York on August 19, 1920, at about midnight, when she was struck by the rear of defendant's automobile and received the injuries for which she has recovered herein. The defendant was not in his car at the time, which was occupied by his chauffeur, Arthur L. Davis, and by a woman named Theresa Lisman, who was driving it at the time of the accident.

Defendant testified that earlier in the evening he was in his car. He had been at his golf club and was driven home from there by his chauffeur Davis. With him in the car were his daughter-in-law and a Mr. Weisner. Defendant lives at 272 West Ninetieth street, near West End avenue. When he got out of the car, he told Davis, the chauffeur, to take defendant's daughter-in-law home and then to take Mr. Weisner home. This was some time between ten and eleven o'clock. Defendant's daughter-in-law lived at the St. Hubert on West Fifty-seventh street, near Carnegie Hall. Mr. Weisner lived on East Seventy-fourth street, between Fifth and Madison avenues. Defendant told the chauffeur nothing else than to take these two people home. Defendant further testified as follows: " Q. It has been testified here, Mr. Mendelson, that about twelve o'clock the same evening your car was seen driven by Miss Theresa Lisman? Do you know any person by that name? A. No, sir. Q. And your car was at 181st Street and St. Nicholas Avenue, driven by Miss Theresa Lisman, accompanied by Arthur Davis, the chauffeur. Did you give any instruction to Arthur Davis to use the car at that place? A. No, sir. Q. Did you have any knowledge that your car was being used by Arthur Davis and Miss Theresa Lisman? A. No, sir. Q. On that evening? A. No, sir. The Court: We will cover the whole situation by one question: Did you authorize Davis to take the car out of the garage that night? The Witness: No, sir."

Defendant's car was being kept at Kraus's Garage on West Ninety-ninth street.

Defendant further testified: " The Court: What was the custom with reference to the use of your car, Mr. Mendelson. It was a car for the use of your family as well as yourself? The Witness: Yes, sir, mostly for my family. The Court: What was your custom on previous occasions with reference to when you got through with the car for the day, and notifying your chauffeur in any way, did you ever say anything to him? The Witness: Always take the car to the garage, naturally. The Court: Did you tell him that on this occasion? The Witness: I never would tell him just take the car to the garage, but I would say

' That is all,' which would signify that I did not want any further use of it."

Davis, the chauffeur, testified that he took defendant's guests first to West Fifty-seventh street and then to East Seventy-fourth street. He then started to go uptown, evidently on his way to the garage on West Ninety-ninth street when at Ninety-seventh street and Fifth avenue, as he testified: " I saw a lady smiling at me and I thought I knew her, and I stopped the car and I put her in the car. She wanted to go home. She asked me to take her home. So— Q. Had you known her? Did you know this lady or you thought you knew her, you say? A. I did not know the lady at that time. Q. What was her name, as you found out afterwards? A. Miss Lisman. Q. You took her in your car? A. Yes, sir. Q. Did you drive the car? A. I did. Q. Where was this? Where did you meet her? A. Ninety-seventh street and Fifth avenue. Q. How far did you drive the car after taking her in? A. I drove the car uptown possibly around One Hundred and Fifty-third street or One Hundred and Fifty-fourth street or One Hundred and Fifty-fifth street somewhere along there on Broadway. Q. Then what happened? A. Miss Lisman wanted to drive the car. Said she was an expert driver and I allowed her to drive the car. Q. And she was driving the car? She started to drive the car from that point on, is that it? A. Yes, sir. The Court: How far did you go up on Broadway? The Witness: I think it was somewhere around One Hundred and Fifty-third street or One Hundred and Fifty-fourth or One Hundred and Fifty-fifth street along there, I cannot say the exact block. The Court: And your garage was in Ninety-ninth street? The Witness: Ninety-ninth street."

It was while this Lisman woman was driving the car that the accident occurred. Davis was asked: " Q. Did he [defendant] authorize you to use the car that evening after you left his friends on Seventy-seventh street? A. He did not. Q. Did he authorize you to permit anyone to drive the car that evening? A. He did not."

The only contradiction of this testimony elicited by plaintiff's counsel was that on his arraignment in the Magistrate's Court, Davis had signed a paper, and made a statement to plaintiff's counsel that he was out on business for his employer. He also testified that prior to the accident, on other occasions, defendant had given him the use of the car; that is, he had asked his employer if he could use the car some evening to go out and defendant said " yes."

Upon this record it is clear that the chauffeur was not engaged

on any business of his employer at the time of the accident; that defendant had never given him any general permission to use his car, which would render his use thereof that of his employer, and that his employer had never given him permission to intrust any one else with the driving or management of his car. When the chauffeur left East Seventy-fourth street, his duty was to return at once to the garage in West Ninety-ninth street. He was on his way there when his flirtation with a chance passer-by led him ·to invite her to enter the car. He then departed entirely from his duty and his employer's business and was engaged on an expedition for his own purposes and pleasure, when, having in violation of his duty intrusted the driving of the car to the woman whom he had intruded therein, the accident occurred under her guidance at One Hundred and Eighty-first street and St. Nicholas avenue, more than four miles north of the defendant's garage. Under these circumstances, under no theory of the evidence could the defendant be held liable. (See *Fiocco* v. *Carver*, 234 N. Y. 219.)

The judgment appealed from should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.