MAX SCHWARTZ, Respondent, v. JULIA W. LAWRENCE, Appellant.

First Department, December 4, 1925.

**Motor vehicles — action for injuries suffered when defendant's automobile struck plaintiff — evidence shows that chauffeur was using automobile for his own use — chauffeur was asked if he did not say he was in hurry and replied he did not remember — testimony by police officer that chauffeur when directed to go to hospital said, "I am in a hurry," was hearsay and did not bind defendant — evidence of police officer was not sufficient to take case to jury — error for court to emphasize testimony by police officer.**

In an action to recover damages for injuries suffered by the plaintiff when he was struck by defendant's automobile, the uncontradicted evidence shows that the defendant's chauffeur was using the automobile at the time of the accident for his own benefit.

Testimony by a police officer that when he directed the chauffeur to take the plaintiff to a hospital the chauffeur replied, "I am in a hurry," and told the officer that he was in a hurry to meet his employer, did not contradict the testimony by the chauffeur who, when asked whether he did not state that he was in a hurry, said that he did not remember. The testimony by the police officer was not in any way binding on the defendant, and, assuming that it was admissible on the question of credibility, it was not sufficient to take the case to the jury.

It was error for the court in its charge to the jury to emphasize the testimony given by the police officer.

APPEAL by the defendant, Julia W. Lawrence, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of January, 1925, upon the verdict of a jury for $15,000, and also from an order entered in said clerk's office on the 30th day of January, 1925, denying defendant's motion for a new trial made upon the minutes.

*Benjamin R. Buffett* [*Morgan J. O'Brien* of counsel], for the appellant.

*Harry G. Fromberg* [*Theodore H. Lord* of counsel; *J. Gillen* with him on the brief], for the respondent.

Burr, J.:

This action is to recover damages for personal injuries alleged to have been sustained by plaintiff when struck by defendant's automobile on March 21, 1921, at or near the southwest corner of Seventh avenue and Fifty-ninth street, New York city.

The happening of the accident was not disputed, but it developed on the trial that at that time the defendant's automobile was being used by her chauffeur on his own business without her knowledge or consent. It was also urged that the accident was due to the plaintiff's negligence.

The plaintiff testified that he stood about twenty-five feet from the southwest corner of Seventh avenue and Fifty-ninth street waiting to board a downtown surface car. Fifty-ninth street is the end of the line and the cars switch from the east tracks to the west tracks to go downtown. At the place where the plaintiff was standing there was building material piled in the street for use in the construction of the Jolson Theatre. The plaintiff finally started for a car, there being a number of other people standing nearer the car. The plaintiff says he looked to his left and saw no machine and then started to walk for the car. He then testified: " I did not see an automobile; just when I went to step over the automobile came in there and pushed me over on the side and knocked me down on the pile of lumber and that is all I know. * * * I saw the automobile on my side and it came over to me. After this automobile struck [me] * * * I fell down on the pile of lumber and it [the automobile] go over my foot."

The chauffeur testified that after leaving the garage at Eightieth street and Broadway he drove through the Park to the entrance of Fifty-ninth street and Seventh avenue. While he was crossing Fifty-ninth street the traffic officer signaled him to stop and allowed two cars coming west on Fifty-ninth street to cut into Seventh avenue going south. The officer then gave him the signal to follow. He says he followed these two automobiles; when he reached a point opposite two trolley cars standing on the tracks the plaintiff suddenly appeared from behind a pile of building material and ran against the right front mudguard of defendant's car; that the plaintiff then sat down on a pile of sand and started to rub his leg.

The defendant testified that the day previous to the accident

the chauffeur had given notice that he was about to quit his position as a chauffeur and that it would be necessary for defendant to obtain another chauffeur. She told him to report on the following morning to the Savoy Hotel where she then lived. She says he did report at the hotel on the following morning.

During the time that the chauffeur was at lunch the defendant came down from her apartment in the hotel for the purpose of riding in the automobile and, although she saw her car, the chauffeur was nowhere to be found. She then hired a taxicab and went about her business in the taxicab. Before doing so, however, she gave orders to the doorman at the hotel to tell the chauffeur to take the car to the garage.

In this statement she is corroborated by the doorman, a man named Morris, who said such a message was given to him and that he did tell the chauffeur to take the car to the garage.

The defendant is also corroborated by the chauffeur who testified that he received such a message and did take the car to the garage and remained at the garage until about five o'clock in the evening when he started for the office of the Portner Motor Car Company, for the sole purpose of seeing a Mr. Morris, in order to secure other employment. He said he left at five P. M. to go to see Mr. Morris at the Portner Automobile Company, that is the National Automobile Company, between Fifty-sixth and Fifty-seventh streets on the west side of Broadway in the middle of the block. In describing the route he took he said: " I entered the Park at Seventy-seventh street and Central Park West. * * * I came around the west side of Seventh avenue and when I got to Seventh avenue, the east and west traffic on Fifty-ninth street was moving and I had to stop there. * * * I was third car from Fifty-ninth street, [there being] two cars in front of me and some behind me. * * * Finally the whistle blew and the officer in charge of traffic there gave us a signal to move, north and south bound traffic to move; * * * finally when I reached about the middle of the car track, where the policeman was, he put his hand out like that (indicating), and allowed two cars that way, coming west, to cut into Seventh avenue. * * * Then he gave me the signal to follow. Q. What did you do? A. Followed on. * * * When I got to a certain point between two trolley cars that were standing empty, I got to the point close up, about a little distance behind the third car and a man suddenly appeared from behind a bunch of building material and ran up against my right front mudguard."

Defendant admits ownership of the car, but denies control of the

36

car or of the person who was driving or in charge of the car at the time of the accident.

The difficult feature of this case is the question of liability of the defendant. Although there is a presumption that the chauffeur was acting in defendant's business at the time of the accident because of the admission of ownership, that presumption may be readily rebutted and was fully rebutted in this case. There was no attempt made to show that the car. was under the control of the defendant at the time of the accident, except through an alleged admission by the chauffeur claimed to have been made to a police officer. No other evidence was offered to prove the fact of control.

The chauffeur was asked if he did not say to the police officer after the accident: " I was in a hurry to go down to meet the lady I am working for." His answer was: " I do not remember having said it. * * * The Court: He says he does not remember whether he told the police officer or not that he was on his way down to meet the lady for whom he was driving. Q. Is that your recollection? A. I said I do not remember."

He insisted that he did not remember whether he made such a statement, or did not make such a statement.

The chauffeur's uncontradicted testimony is that he not only brought the plaintiff to the hospital, but waited for him there and then brought him to his, plaintiff's, residence in Henry street, in the lower part of the city, and that the chauffeur had no communication with the defendant whatever that day or thereafter up to the time of the trial.

The police officer, Israel Newman, was recalled and he testified as follows: " Q. Did you have some conversation. as to where he was going and what he did? A. I did. Q. What did he say to you, and what did you say to him? A. In my own language, if I can put it that way? Q. Yes. A. I relieved the congestion of traffic and then I say to him, ' You take me over with this injured man to the hospital.' ' Oh,' he said, ' I am in a hurry,' and he was all flustered up. I said, ' Whether you are in a hurry or not,' I said, ' You go with me.' And he said, ' I must go to see my Madam, and I have an appointment with my Madam, and I have to get there,' and I said, ' You are going to take me to the hospital,' and at the hospital I telephoned to the police station to let them know of my whereabouts. This is the rule of the Department. And from there I rode to the 47th Street police station and made an entry to the desk lieutenant of the occurrence."

It is evident, therefore, that the alleged admission was not that which was contended for and, in any event, the evidence could

be competent for one purpose and one purpose only, to test the credibility of the witness, that is, to impeach the witness. If competent, therefore, it was on his credibility alone. The evidence did not contradict the chauffeur, when he said he did not remember whether he made the statement attributed to him.

In the recent case of *Moore* v. *Rosenmond* (238 N. Y. 356) the court said: " While the evidence might have been admissible to contradict or impeach Dollar as a witness for the defendant, in case he testified to anything inconsistent with the statement, Dollar could not bind or affect the defendant by his admissions or declarations made ·after the accident to third parties. His narrative of past events, no part of the accident itself, was pure hearsay. (*Kay* v. *Metropolitan St. Ry. Co.*, 163 N. Y. 447; *Hanrahan* v. *N. Y. Edison Co.*, 238 N. Y. 194.) "

In *Benevento* v. *Poertner Motor Car Co.* (235 N. Y. 125) the court said: " The evidence of Niemand as to the alleged declaration of Phipps that the latter was told by defendant to use the car to go home and get his dinner was admitted without objection and necessarily was considered by the jury as material upon the question as to whether or not Phipps, at the time of the accident, was operating the car by direction of and in the manner authorized by defendant. The trial justice submitted the case to the jury solely by reason of such evidence. Therein the trial justice erred. The jury was not authorized to disregard the evidence which clearly disclosed that the chauffeur, at the time of the accident, was not acting in the course of his employment."

While I doubt very much that this testimony could have been allowed in to impeach the chauffeur or contradict him for the reason that it did not contradict or impeach him, nevertheless, it was nothing more than hearsay evidence and could not bind the defendant to such an extent as to make her liable for the accident.

Similar evidence was introduced in the case of *Byrne* v. *Mendelson* (210 App. Div. 5), opinion written by Mr. Justice DOWLING, in which testimony was elicited by plaintiff's counsel to show that when the chauffeur was arraigned in the Magistrate's Court, he had signed a paper and made a statement to plaintiff's counsel that he was out on business for his employer. This court said: " Upon this record it is clear that the chauffeur was not engaged on any business of his employer at the time of the accident; that defendant had never given him any general permission to use his car * * *. Under these circumstances, under no theory of the evidence could the defendant be held liable. (See *Fiocco* v. *Carver*, 234 N. Y. 219.) "

The Court of Appeals said in *Fallon* v. *Swackhamer* (226 N. Y. 444, 447): " The only evidence in behalf of the plaintiff is the presumption which arises from the ownership of the car, but as has been stated by this court such presumption continues only so long as there is no substantial evidence to the contrary."

In *Potts* v. *Pardee* (220 N. Y. 431) the court said: " The presumption growing out of a *prima facie* case, however, remains only so long as there is no substantial evidence to the contrary. When that is offered the presumption disappears, and unless met by further proof there is nothing to justify a finding based solely upon it."

The evidence of the defendant and her witnesses that the chauffeur was using the car on his own account at the time of the accident and without defendant's consent, knowledge or permission stands uncontradicted.

It would seem, therefore, that assuming everything that the plaintiff said to be true in this case, no cause of action was made out.

Without going into the question of whether this testimony of the police officer was competent, and assuming for the purpose of argument that it was competent, it was not sufficient to take this case to the jury, nor could liability be predicated upon any such testimony.

In addition, the learned trial justice in his charge pointed out this particular testimony and stressed the fact before the jury that the police officer shortly after the accident elicited information from the chauffeur that he was in a hurry to keep an appointment with the defendant. This I think was error, although no objection was raised or exception taken at the time.

It was the duty of the trial justice to emphasize the fact that this evidence, at most, was hearsay evidence and was permitted in on the sole theory that it might affect the credibility of the chauffeur. No such limitation was given and the jury were evidently impressed with the idea that this statement made the defendant liable.

There is no evidence upon which to base the verdict, and as previously stated, assuming everything in plaintiff's favor, the verdict is against the weight of the evidence.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.