ANNA COHEN and Another, as Administrators, etc., of GUSSIE COHEN, Deceased, Respondents, *v.* THE CITY OF NEW YORK, Appellant.

First Department, February 5, 1926.

**Motor vehicles — action against city of New York to recover for death of plaintiffs' intestate — intestate was waiting for street car when defendant's motor truck traveling on wrong side of street struck her — negligence was shown — driver of truck at time of accident was driving outside of route for personal purposes — defendant is not liable.**

In an action to recover damages for the death of plaintiffs' intestate who was killed when she was struck by one of defendant's motor trucks, the evidence establishes negligence in the operation of the truck, since it appears that the intestate was standing close to a street car track waiting to board an approaching car, and that defendant's truck, which was at the time being driven on the wrong side of the street and at an excessive rate of speed, struck the intestate.

However, defendant is not liable, since it appears that at the time of the accident the driver of the truck was operating it outside his regular route and for purposes personal to himself, and was, therefore, outside of the employment at the time of the accident.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of March, 1925, upon the verdict of a jury for $15,000.

*George P. Nicholson,* Corporation Counsel [*Elliot S. Benedict* of counsel; *John F. O'Brien* and *William R. White* with him on the brief], for the appellant.

*Slade & Slade* [*David Slade* of counsel; *Maxwell Slade* with him on the brief], for the respondents.

DOWLING, J. The plaintiffs' intestate, a girl about nineteen years old, living with her mother and contributing to the latter's support, was fatally injured between the hours of one and two o'clock on the morning of February 12, 1922, by an automobile truck of the department of street cleaning driven by one James C. Hogan. On the night in question she had attended a dance with other companions and intending to go home, she was waiting at the

southeast corner of Sixty-seventh street and Second avenue close to the uptown or north-bound car track, waiting for a Second avenue surface car to take her to her destination. The north-bound car had approached to where the plaintiff's intestate was standing and almost came to a stop, when the truck of the defendant came rapidly and at an excessive rate of speed, south, on the north-bound car tracks, thus being on the wrong side of the street, and while so traveling the said truck of the defendant ran into the plaintiffs' intestate and other girls who were with her, as a result of which the plaintiffs' intestate received severe injuries. She was taken to the hospital and within a few minutes thereafter died.

The driver of defendant's truck, James C. Hogan, testified that on the 11th of February, 1922, he was assigned to collect ashes in a subdivision of the fifth district which subdivision ran from Fourteenth to Twenty-fourth street, between Seventh avenue and the North river; that he collected two loads of ashes from houses in his district and delivered them to the West Thirtieth street dump, and after dumping the last load went to the department stable located on Fifteenth street, between Ninth and Tenth avenues, sometime between eleven and twelve P. M. of the evening in question and there reported that he had cleaned up all of the ashes in his district. He also testified that his hours of duty were from seven P. M. to four o'clock the next morning, and that when he got through removing ashes he was required to return to the Fifteenth street stable, between Ninth and Tenth avenues, report his work was done and then go to the garage at Twenty-fourth street and the East river, where he was to stay ready for duty in case of snow, until four A. M. He further testified that he took his automobile truck on the night in question from the garage about eight P. M., went to the stable to report and stayed there about fifteen or twenty minutes before going out to collect ashes; that after he reported back to the stable that the ashes were cleaned up, he left to return to the garage, going through Fifteenth street, but that when he reached Ninth avenue at about a quarter to twelve, he met two friends who worked in the department who asked him to give them a ride. They got on the truck; and he drove through Fifteenth street over to Broadway, around Broadway to Union Square Park, through Seventeenth street over to First avenue and up First avenue to Eightieth street, over to Second avenue, and then left them off there. He then drove south on Second avenue to near Sixty-seventh street and Second avenue, where the accident happened.

His explanation of the accident is that as he approached Sixty-seventh street and Second avenue, a south-bound car had stopped on the northwest corner and finding that he was nearer to it than he

had thought, he turned to his left (to the east) to pass the car and his automobile skidded, and kept skidding until about three feet in front of him he saw the girls jump out; he did not notice where they came from. He then put on his brakes, stopping his machine in about ten feet, and ran back to the corner, where he found the injured girls.

Upon the issue of negligence the jury found in favor of plaintiff, and we think properly so. The real question in the case is whether a chauffeur of the department of street cleaning, who had been ordered to proceed with his truck from Fifteenth street and Ninth avenue to the department garage at Twenty-fourth street and the East river and there remain on snow removal duty, was acting within the scope of his employment when he ran over and killed the plaintiffs' intestate at Sixty-seventh street and Second avenue more than one hour later while returning from Eightieth street and Second avenue to which place he had transported two fellow-employees, one of whom lived not far away.

It seems to me that this question can have but one answer, under the undisputed facts herein.

In *Carty* v. *Acker, Merrall & Condit Co.* (210 App. Div. 789) the facts are stated as follows in the opinion (at p. 790): "At about a quarter of seven o'clock on the evening in question the chauffeur having finished his work for the day left defendant's store at One Hundred and Twenty-fifth street and Seventh avenue with his truck empty. His destination then should have been the garage at One Hundred and Twenty-fifth street and First avenue. Instead of going there directly, however, as his duty required, he took on board the truck one of his fellow-employees in defendant's store. He took such employee to his home at One Hundred and Forty-fifth street and Amsterdam avenue, left him there, went up to One Hundred and Forty-sixth street and Amsterdam avenue, turned the corner, came down Amsterdam avenue to One Hundred and Forty-fifth street, proceeded east on One Hundred and Forty-fifth street to Lenox avenue, and was turning down Lenox avenue when his truck struck the plaintiff. At that time he was on his way to the garage." In its opinion this court said (at p. 792): "It will thus be seen that there is absolutely no evidence of any authority given to the chauffeur to depart from his assigned route to the garage from the store with his empty truck, for the purpose of taking a friend a mile to the north. Whatever argument might be made as to his authority to take fellow-employees on his truck to drop them off as he traveled his route from the store to the garage along One Hundred and Twenty-fifth street from Seventh avenue to First avenue, certainly there is no evidence here which can be possibly

held to authorize his departure from his route to take such employees to their homes far away from his path of duty. The taking aboard his truck and conveying to his home of another employee, under the circumstances shown here, must be held to constitute an abandonment of the employer's business and an engagement on a private and unauthorized undertaking of his own. For the results following such an undertaking the defendant is not liable. (See *O'Brien* v. *Stern Bros.*, 223 N. Y. 290; *Der Ohannessian* v. *Elliott*, 233 id. 326; *Fiocco* v. *Carver*, 234 id. 219; *Campbell* v. *Warner*, Id. 645.) " (See, also, *Benevento* v. *Poertner Motor Car Co.*, 235 N. Y. 125.)

The judgment appealed from should, therefore, be reversed, with costs to appellant, and judgment entered dismissing the complaint herein, with costs.

CLARKE, P. J., MERRELL, MCAVOY and BURR, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.